UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CANARA FARUQ,                                                  03-CV-0192E(Sc)

                          Plaintiff,

                                                               MEMORANDUM

          -vs-                                                      and

WAL-MART STORES, INC.,                                         ORDER[1]

                          Defendant.

---

Plaintiff, an African-American Muslim female, commenced this discrimination action on January 17, 2003 in New York State Supreme Court, County of Erie, against her former employer, Wal-Mart Stores, Inc.  Defendant removed this action to this Court on March 10, 2003.  Plaintiff filed an Amended Complaint on March 22, 2004 claiming that defendant violated, *inter alia*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.,* the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.,* and New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law §296 *et seq.,* and asserting several state law causes of action — *viz.*, breach of contract, breach of covenants, negligence and intentional infliction of emotional distress.  On November 29, 2004, defendant filed a motion for summary judgment, which was argued and submitted on June 3, 2005, seeking dismissal of plaintiff's claims.  For the reasons set forth below, defendant's motion

---

[1]This decision may be cited in whole or in any part.

will be granted as to plaintiff's federal claims and the corresponding state claims under NYHRL.  As such, the Court lacks jurisdiction to adjudicate plaintiff's state law claims and will remand the matter to state court.

Plaintiff claims that defendant discriminated against her based on her race, ethnic background, religion and age by subjecting her to disparate treatment, failing to promote her and ultimately terminating her in violation of Title VII, the ADEA and NYHRL.  Plaintiff also alleges that defendant's said discrimination and conduct (1) breached contractual and procedural safeguards, (2) breached covenants to treat her fairly and in a nondiscriminatory manner, (3) breached defendant's contractual obligation to provide her with a bonus and (4) was negligent and harassing and intentionally inflicted emotional distress.  In moving for summary judgment, defendant asserts that plaintiff's Title VII, ADEA and NYHRL claims should be dismissed because (1) she cannot meet her *prima facie* burden and (2) she was terminated due to her poor attendance and tardiness record, and that her state law claims should be dismissed because (1) she is an at-will employee and thus cannot make a claim for a tort, breach of contract or wrongful discharge under New York State law and (2) she was not eligible for a bonus.

The facts, in the light most favorable to plaintiff — the non-moving party —, are found as follows and are undisputed except where otherwise noted.  Plaintiff

was hired as a part-time ophthalmic assistant by defendant on December 26, 1996 and was terminated on January 21, 2002.  Plaintiff was first employed in the vision center at the Wal-Mart store in Clarence, N.Y. ("Clarence Wal-Mart") and was later transferred to the vision center at the Wal-Mart store in Lockport, N.Y. ("Lockport Wal-Mart").   On her signed application for employment, plaintiff initialed a paragraph that stated that defendant "can terminate [her] employment at any time with or without cause."  (Schröder Aff., Ex. L; *see also* Ex. O.)  Defendant's disciplinary procedure, of which plaintiff was aware, is to inform its employees of conduct or performance that is below expectations and to provide the employees with a plan of action for improving the problem.

Plaintiff attained an Associates of Science degree in Ophthalmic Dispensing ("AS Degree") eight months after commencing her employment with defendant and, during the course of her employment, passed the American Board of Opticianry ("ABO") exam, which is the basic exam that certifies opticians.  Plaintiff had prior managerial and retail experience and, when she began working at Wal-Mart, she claims that the Clarence Wal-Mart vision center manager, Greg Long, informed her that promotions and management opportunities would be available and that Wal-Mart promotes from within the company.  Plaintiff also claims that Long had told her that flexible scheduling would not be a problem.  Upon receiving her AS Degree, plaintiff inquired about a position for a licensed optician and was

told that no such opening was available in the Clarence Wal-Mart but allegedly might be in the Lockport Wal-Mart.  Plaintiff also claims that she was supposed to receive a pay raise upon passing her ABO licensing exam, but did not receive said raise until well after passing the exam.

Plaintiff alleges that, while she was working at the Clarence Wal-Mart, Jim VanDuzer, a Caucasian, was hired in the vision center and was later promoted to manage the vision center in the Wal-Mart store in Cheektowaga, N.Y.  Plaintiff claims that Long recommended VanDuzer for this promotion although there were several complaints regarding VanDuzer of which Long was aware.  Plaintiff claims that, as a result of VanDuzer's promotion and her own lack of promotion, she transferred to the Lockport Wal-Mart where she hoped that she would have a better chance of receiving a promotion.

The manager of the Lockport Wal-Mart vision center was Jenna Burkard. When plaintiff began working at the Lockport Wal-Mart, Burkard was already training an employee for a management position and could only train one employee at a time.  Pursuant to plaintiff's request, Burkard gave her a raise based on passing the ABO exam.  Plaintiff asserts that customers commented on how much they enjoyed working with her and that she was a leading sales associate in her department at the Lockport Wal-Mart; in particular, plaintiff claims that she sold as much as that sold by 6 or 7 other sales associates combined.  Defendant, on the

other hand, claims that other employees complained about plaintiff's performance and constant tardiness.

Plaintiff claims that she requested and received a meeting with the district manager for Wal-Mart's Optical Division, James O'Neill, regarding her desire for management training.  Plaintiff claims that, as a result of this meeting, she was supposed to receive managerial training from Burkard, but said training did not occur.  Shortly thereafter, Ann Marie Szolnoky, a Caucasian, joined the staff. Szolnoky had previously worked for defendant, was a friend of Burkard and was promised managerial training by Burkard.  Szolnoky temporarily replaced Burkard while she was on maternity leave and plaintiff claims that Szolnoky was hired for the next available managerial position in a vision center in the district.  Defendant claims that no such managerial positions were available.

Plaintiff contends that, in addition to not receiving managerial training, she was not given the opportunity for any advancement while Caucasian employees received such.  For example, plaintiff was not trained on how to order contact lenses but claims that Jessica Diemert, a Caucasian employee, received said training on plaintiff's day off.

Plaintiff met with O'Neill and Burkard in September 2001, but plaintiff's lack of training was not the focus, although, subsequent to this meeting, Burkard arranged a weekly time to train plaintiff but allegedly made excuses to avoid such.

During the meeting, O'Neill and Burkard discussed plaintiff's attendance problems. Plaintiff claims that her attendance had been approved by Burkard as "flex time" and that, because the schedule could easily and was often edited, Burkard's approvals were not necessarily noted.  Plaintiff asserts that the attendance records of Szolnoky, Candy Rueb, Christopher Mack and Rebecca Perry — all Caucasian employees — were edited to their benefit.  Furthermore, plaintiff alleges that her schedule was changed in an untimely manner to create a reason for her termination.  Plaintiff, however, does not provide any evidence to substantiate her claims — such as when her schedule was untimely altered — or provide specific information regarding the alleged altering of other employees' attendance records — such as the employees' positions, the dates of these employees' alleged attendance problems and the instances when their records were altered.

There is no dispute, however, that plaintiff did have problems with her punctuality and other attendance-related issues and that attendance records could and would often be altered by the manager.  Plaintiff does not dispute having significant problems with clocking-in on time and with taking an appropriate number of breaks for the approved amount of time.  She also admits to continuing said violations after the September 2001 meeting, during which she was warned that, if the problems continued, she would be terminated.  Nonetheless, plaintiff's attendance problems continued. Plaintiff's only claim is that Caucasian employees

with similar violations were not terminated and instead had their attendance records altered to their benefit.  In response, defendant claims that its time and attendance reports were not altered without documentation and without cause — to wit, exceptions to tardiness or failure to attend as scheduled were given when, *inter alia*, a last minute shift change occurred or an employee requested time off from a supervisor.  Defendant, moreover, asserts that Burkard had disciplined other employees for poor attendance and terminated a Caucasian male employee for attendance problems and violations of other company policies.

Plaintiff claims that defendant was planning on terminating her for requesting to receive managerial training and that defendant anticipated plaintiff's discrimination suit prior to her termination.  Moreover, plaintiff claims that she was the only Muslim and African-American who, to the best of her knowledge, was employed by defendant in the vision center at the Lockport Wal-Mart and possibly in the district. Plaintiff cites a few instances where racist comments were allegedly made to her — to wit, (1) Burkard told her that everyone wants white women, (2) Burkard told plaintiff that she always wanted something special in response to plaintiff's request for a day off for prayer after the Ramadan holiday, (3) a co-worker said "I didn't think that Muslims prayed" and (4) a Caucasian employee told plaintiff that she was not allowed to discuss Muslim religious practices because it was disturbing to others.  Finally, plaintiff maintains that she was not warned nor

were there complaints of any attendance violations after the September 2001 meeting.  She does, however, admit that she continued to violate defendant's policy and was warned that, if such continued, she would be terminated.  Defendant maintains that it followed its policy by informing plaintiff that she was not meeting the requirements and expectations of her position and by working with her to improve her attendance.  It is undisputed that plaintiff continued to abuse the attendance policy even after being warned on her yearly evaluations and at personal meetings, which abuse resulted in her termination.

Summary judgment may be granted if the evidence offered shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FRCvP 56(c).  There is no genuine issue for trial unless the evidence offered favoring the non-moving party would be sufficient to sustain a jury's verdict for that party. *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Thus, when reasonable minds could not differ as to the outcome of an issue, summary judgment is appropriate on that issue. *Id.* at 251-252.  The moving party initially bears the burden of showing that no genuine issue of material fact is present but the opposing party must then "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250.  If the non-moving party fails to establish, after a reasonable opportunity for discovery, the existence of an element essential to that party's claim and on which it will bear the burden of proof at trial,

summary judgment is appropriate because such failure to establish an essential element of the case renders all other facts immaterial.  *See Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322-323 (1986).

When assessing the record in making a summary judgment determination, a court must view all ambiguities and factual inferences in the light most favorable to the non-moving party.  *Adickes* v. *S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). However, the non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  FRCvP 56(e); *Gottlieb* v. *County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996).

Of course, the summary judgment standard applies with equal force to discrimination cases as it does to other cases.  *See Ashton* v. *Pall Corp.,* 32 F. Supp. 2d 82, 87 (E.D.N.Y. 1999) ("[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation.") (*quoting Meiri* v. *Dacon,* 759 F.2d 989, 998 (2d Cir. 1985)).  However, courts must be aware of the fact that evidence of discrimination is rarely overt.  *See Bickerstaff* v. *Vassar Coll.,* 196 F.3d 435, 448 (2d Cir. 1999) ("[E]mployers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law.") (*quoting Ramseur* v. *Chase Manhattan Bank,* 865 F.2d

460, 464-465 (2d Cir. 1989)).  In addition, courts must "also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Ibid.*  Thus, the issue for the court is "whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances." *Ibid.*  The Court will first address plaintiff's federal law claims.

Plaintiff alleges that defendant violated Title VII, the ADEA and NYHRL.  In the absence of direct evidence of discrimination, ADEA and NYHRL claims are analyzed under the same burden-shifting framework espoused in *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792 (1973), and its offspring as Title VII discrimination claims.  *Abdu-Brisson* v. *Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir. 2001) ("[A]ge discrimination suits brought under the [NYHRL] are subject to the same analysis as claims brought under the ADEA [— which are analyzed] under the same burden shifting framework as claims brought pursuant to Title VII of the Civil Rights Act of 1964, as amended.").  As the analysis of NYHRL claims is identical to Title VII and ADEA claims, dismissal of plaintiff's Title VII and ADEA claims allows for dismissal of her NYHRL claims without divesting the jurisdiction of the Court.

In bringing a case under Title VII, the plaintiff bears the initial burden of making out a *prima facie* case of discrimination.  *St. Mary's Honor Ctr.* v. *Hicks,* 509

U.S. 502, 506 (1993); *Texas Dep't of Cmty. Affairs* v. *Burdine,* 450 U.S. 248, 252-253 (1981).  If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the alleged employment action. *Burdine,* at 253 (quoting *McDonnell Douglas,* at 802). Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Id.* at 253 (quoting *McDonnell Douglas,* at 804).

To state a *prima facie* case for her claim that defendant failed to promote her due to her age, religion, ethnicity and/or race, plaintiff must establish that (1) she is a member of a protected class, (2) she applied and was qualified for a job for which defendant was seeking applicants, (3) she was rejected for the position and (4) the position remained open and defendant continued to seek applicants having her qualifications. *Brown* v. *Coach Stores,* 163 F.3d 706, 709 (2d Cir. 1998).  Plaintiff has failed to state a failure-to-promote claim under Title VII, the ADEA and NYHRL because she did not apply for a position, was not qualified for a managerial position and cannot show that defendant was seeking applicants for a vision center manager.  Plaintiff merely claims that she requested managerial training and was denied such.  By definition, therefore, she was not qualified for a managerial position.  Furthermore, she has made no allegation that she applied to be a

manager or that she knew that such a position was available. Therefore, plaintiff's failure-to-promote claims under Title VII, the ADEA and NYHRL will be dismissed.

To make out a *prima facie* case of discrimination, plaintiff must allege that she (1) is a member of a protected class, (2) was performing her job satisfactorily, (3) was subjected to an adverse employment action and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas,* at 802; *Graham* v. *Long Island Rail Road,* 230 F.3d 34, 38 (2d Cir. 2000). To establish the fourth element of the *McDonnell Douglas* test, plaintiff must show that she was treated differently from employees outside her protected class with whom she was "similarly situated in all material respects." *Shumway* v. *United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir. 1997) (citation and quotations omitted). What constitutes "all material respects" varies from case to case and must be judged based on (1) whether plaintiff and those she maintains were similarly situated were subject to the same workplace standards, performance evaluations and/or discipline standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. *Graham,* at 39-40. The conduct need not be identical; the acts need only be of "comparable seriousness." *Id*. at 39 (finding that the standard for comparing conduct requires a "reasonably close resemblance of the facts and circumstances

of plaintiff's and comparator's cases, rather than a showing that both cases are identical").

Plaintiff does not meet her burden in establishing an age discrimination claim.  Section 623(a) of the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age".  29 U.S.C. §623(a).  Plaintiff does not allege or provide evidence that any of defendant's allegedly discriminatory conduct was due to her age.  She makes no reference to the age of any of the other employees and simply states that she is fifty-three years old.  Clearly, her burden is not met as she does not identify whether the allegedly similarly situated employees are outside or a member of her protected class and her ADEA claims and age discrimination claims under NYHRL will be dismissed.

Plaintiff claims that defendant discriminated against her in violation of Title VII and NYHRL due to her ethnic background, religion and race.  Title VII states that "[i]t shall be an unlawful employment practice for an employer ∗∗∗ to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ∗∗∗."  42 U.S.C. §2000e-2(a)(1).  To make out a *prima facie* case of discrimination — as with a *prima facie* case of age discrimination —,

plaintiff must allege that (1) she is a member of a protected class, (2) she was performing her job satisfactorily, (3) she was subjected to an adverse employment action and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination in that she was treated differently from similarly situated employees. *McDonnell Douglas,* at 802; *Graham,* at 38. Defendant asserts that plaintiff, although a member of a protected class who was terminated, cannot establish that she was performing her job satisfactorily or that her termination occurred under circumstances giving rise to an inference of discrimination.  In the alternative, defendant contends that it can articulate a legitimate, non-discriminatory reason for plaintiff's termination — to wit, that plaintiff had problems with attendance and reporting to work on time —, which plaintiff cannot show is a pretext for discrimination.

As with her age discrimination claim, plaintiff does not make allegations or provide evidence that would allow her to meet her *prima facie* burden of establishing discrimination.  First, plaintiff does not identify the religion of any other employees; she simply claims that she is *probably* the only Muslim employed at the Lockport Wal-Mart.  Plaintiff fails to allege that other employees were outside her religious class and thus does not meet her *prima facie* burden.  Plaintiff, moreover, does not provide any evidence suggesting that defendant thought that she was of a particular ethnicity — *viz.,* Arabic — or that such resulted in her

termination.   The only allegations she makes concern her race and such are insufficient to meet her *prima facie* burden.

Plaintiff does not claim that she was performing her job satisfactorily and does not identify a similarly situated employee.   Plaintiff admits that she had problems with being on time to work and that she knew that she was violating defendant's clearly-stated attendance policies.  Consistent tardiness is not a facet of satisfactory job performance.  Moreover, plaintiff does not allege facts sufficient to meet her burden in identifying similarly situated employees.   She does not identify the behavior of the similarly situated employees beyond a general, conclusory allegation that they too violated defendant's policies.  She does not allege how often, in what manner and when those alleged violations occurred.  To establish that an employee is similarly situated, plaintiff must show that the employee "had engaged in conduct similar to [hers]."   *Norville* v. *Staten Island Univ. Hosp.,* 196 F.3d 89, 96 (2d Cir. 1999).   Plaintiff does not make any allegations regarding the conduct of the allegedly similarly situated employees beyond just violative of defendant's policies.   An allegation of a policy violation does not constitute, without more, similar conduct.  Plaintiff, therefore, cannot establish her *prima facie* discrimination case and thus her Title VII and NYHRL claims will be dismissed.

Assuming *arguendo* that plaintiff meets her *prima facie* burden with regard to her race discrimination claim, she fails to show that defendant's asserted reason — plaintiff's attendance-related problems — is a pretext and said failure also destroys her claims of discrimination as to her age, religion, ethnicity and race.  In fact, plaintiff admits that she was in violation of defendant's attendance policies, that she was informed of such and that she continued her violations after being warned that it may result in her termination.  Plaintiff's sole allegation in response to defendant's asserted reason is that similarly situated employees were not terminated for their violations.   A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination.  *Hargett* v. *Nat'l Westminster Bank, USA,* 78 F.3d 836, 839 (2d Cir. 1996); *Graham,* at 43.  Plaintiff's evidence, however, does not identify a similarly situated employee and is thus equally flawed and insufficient as pretext evidence.   Plaintiff fails to demonstrate that the white employees cited are similarly situated as a matter of law and therefore plaintiff has failed to meet her burden of showing that defendant's non-discriminatory reasons for terminating plaintiff was a pretext for racial discrimination.  *See, e.g.,  Aguirre* v. *New York State Police,* 156 F. Supp. 2d 305, 321 (S.D.N.Y. 2001) (finding that plaintiff's failure to identify a similarly situated

employee also proves insufficient as pretext evidence). Plaintiff's discrimination claims, therefore, will be dismissed.

A defendant in a civil action may remove to federal court any case over which a district court has original jurisdiction, 28 U.S.C. §1441(a), including any action that arises under federal law, 28 U.S.C. §1331. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c). The removal statute is to be construed strictly because of its mandatory language and the significant federalism concerns raised by removal jurisdiction. *Shamrock Oil & Gas Corp.* v. *Sheets,* 313 U.S. 100, 108-109 (1941). Upon dismissal of plaintiff's federal claims and claims under NYHRL, the Court's removal jurisdiction is destroyed and the case must be remanded.

Accordingly, it is hereby **ORDERED** that the Clerk of this Court shall remand this case to the New York State Supreme Court, County of Erie, that the Clerk of this Court shall close this case in this Court and that the parties shall bear their own costs.

DATED:      Buffalo, N.Y.

            January 23, 2006

                              /s/ John T. Elfvin
                         _____
                              JOHN T. ELFVIN
                              S.U.S.D.J.